# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID NORKIN,<br>    Plaintiff,<br><br>v.<br><br>DLA PIPER RUDNICK GRAY CARY LLP,<br>    Defendant. | Case No.<br>3:06cv562(SRU) |

## RULING ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

    The plaintiff, David Norkin, was the former president and sole beneficial shareholder of Britestarr Homes, Inc. ("Britestarr"). Britestarr's only valuable asset consisted of a parcel of land, the "Oak Point site," located in Bronx, New York, which Britestarr had sought to sell or develop. In 1999, Britestarr retained the defendant, DLA Piper Rudnick Gray Cary LLP ("Piper"), to assist with the sale or development of the property. Before it could dispose of the property, however, Britestarr became embroiled in several legal disputes and, upon Piper's advice, filed for bankruptcy. The instant dispute arises out of Piper's representation of Britestarr and, allegedly, Norkin.

    In May 2005, Britestarr filed an action against Piper in which it alleged, among other causes of action, that Piper breached its fiduciary duty to Britestarr, and that Piper committed malpractice. Piper moved for summary judgment on all of Britestarr's claims, and on September 28, 2006 I granted Piper's motion. *See Britestarr Homes, Inc. v. Piper Rudnick LLP*, 453 F. Supp. 2d 521 (D. Conn. 2006). I presume familiarity with the facts and reasoning set forth in that decision.

    Also in May 2005, Norkin filed the instant two-count complaint against Piper in which he similarly alleges that Piper breached its fiduciary duty to him, and that Piper committed

malpractice in its representation of him. In short, Norkin's principal complaint underlying each of his claims is that Piper improperly failed to advise him of an offer that ABB Equity Ventures ("ABB"), a potential buyer of the Oak Point site, made to Britestarr in March 2002 to extend an existing option to buy the Oak Point site for eighteen to twenty months. Piper now moves to dismiss or, in the alternative, for summary judgment on both of Norkin's claims.[1]

Norkin's claims are indistinguishable from Britestarr's claims in almost all respects. For example, Norkin alleges that "Piper breached its fiduciary duty to Norkin" by "representing a competing power plant . . . when Piper was obligated to advance the Oak Point project," and by "failing to advise Norkin of ABB's March 2002 settlement proposal." Compl. at ¶¶ 29a, 29b. Britestarr had alleged that "Piper breached its fiduciary duties" by "representing a competing power-plant project . . . when Piper was bound to advance . . . the Oak Point project," and by "failing to advise Britestarr of ABB's March 2002 extension proposal." Second Amended Compl., *Britestarr Homes, Inc. v. Piper Rudnick LLP*, 3:05cv796(SRU) (doc. #100) at ¶¶ 81b, 81c ("Britestarr's Compl."). Norkin also alleges that Piper improperly "advised Norkin to resign as Britestarr's President rather than advising him and Britestarr to accept ABB's settlement offer," and that Piper "failed to advise Norkin of ABB's March 2002 settlement proposal." Compl. at ¶¶ 33a, 33b. Britestarr had similarly alleged that Piper had improperly "failed to advise Britestarr of ABB's March 2002 extension proposal." Britestarr's Compl. at ¶ 95b.

Because Norkin's claims involve essentially the same facts and legal arguments that

---

[1] In its motion, filed before my ruling in *Britestarr Homes, Inc. v. Piper Rudnick LLP*, Piper argues that: (1) Only Norkin's bankruptcy trustee, and not Norkin himself, has standing to raise the instant claims; (2) Norkin has previously testified that Piper did not represent him during the instant transactions; and (3) Norkin has also previously testified that he would have rejected the offer about which Piper allegedly failed to inform him.

formed the basis of Britestarr's claims against Piper, my decision in *Britestarr Homes, Inc. v. Piper Rudnick LLP* is dispositive of the issues presented here. My ruling in that case sets forth my reasoning in greater detail. Briefly, even if otherwise cognizable, Norkin's claims rest largely on the same faulty premises upon which Britestarr's claims rested, namely, (1) that a reasonable jury could infer that ABB actually made an offer to Norkin in March 2002 to extend the option agreement, and (2) that a reasonable jury could infer that Norkin, on Britestarr's behalf, would have accepted the offer if Piper would have disclosed the offer to him.[2] With regard to the first premise, ABB's former general counsel, Robert Henry, had testified that ABB had discussed extending the option agreement in March 2002, but that ABB had not make any specific proposals. I thus found in *Britestarr* that the record did not include "evidence that would permit a reasonable jury to answer affirmatively the threshold question whether ABB made an offer to extend the option agreement." *Britestarr*, 435 F. Supp. 2d at 532-33. With regard to the second premise, Britestarr and ABB were engaged in a bitter dispute at the time of the alleged extension offer, and Norkin had recently rejected a substantially similar offer from ABB, commenting that he "never would have signed" the offer, and that the offer was an "abomination" and a "joke." *Britestarr*, 453 F. Supp. 2d at 532. I thus determined in *Britestarr* that "there [was] no evidence from which a reasonable jury could infer that Britestarr would have accepted an offer to extend the ABB Option Agreement had Piper recommended it." *Id*. at 533. In this case, Norkin has not

---

[2] Norkin also alleges that Piper's representation of the TransGas project, a competing power plant project, during its representation of the Britestarr project constituted an impermissible conflict of interest. I addressed that identical claim in *Britestarr* and found that no conflict existed, in part because, although the companies both participated in the same industry, there was no evidence that Britestarr and TransGas were competing for a "unique business opportunity." *Id*. at 536. I do not disturb that holding here.

presented any evidence to rebut my findings in *Britestarr*.

The only potentially significant difference between Norkin's claims and Britestarr's claims is that Norkin alleges that Piper improperly advised him to resign as Britestarr's president, and that his resignation caused him to forgo his right to earn a salary and other benefits. That difference, however, does not save Norkin's complaint. Even under Norkin's view, his continued employment as Britestarr's president depended upon ABB making him an offer to extend the option agreement, and upon his acceptance of the offer, which would have allowed Britestarr to avoid bankruptcy and keep Norkin as president. *See* Aff. of David Norkin, p. 5, ¶ 19 (Dec. 27 2005). As I held in *Britestarr*, however, the record does not include evidence that would permit a reasonable jury to find that ABB actually offered to extend the option agreement, nor is there evidence from which a reasonable jury could infer that Norkin would have accepted ABB's alleged offer. The evidence in Norkin's affidavit, *id*., suggests, at most, that he was not informed of an offer – an offer that Norkin does nothing to prove ABB ever made.

In conclusion, because Norkin bases his claims on the same facts and legal arguments presented in *Britestarr*, my holding in *Britestarr* dictates the result in this case. I find no reason to disturb that holding here, and thus, Norkin's claims for breach of fiduciary duty and legal malpractice against Piper fail.

Piper's motion to dismiss or, in the alternative, motion for summary judgment **(doc. #10)** is hereby **GRANTED**. The clerk shall close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 28th day of March 2007.

                                                /s/ Stefan R. Underhill
                                                     Stefan R. Underhill
                                                     United States District Judge